UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-17 (LMP)

UNITED STATES OF AMERICA,

Plaintiff,

v.

NATHAN LLOYD STAPLES,

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and the defendant, Nathan Lloyd Staples, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the U.S. Attorney's Office for the District of Minnesota (hereinafter "the Government"). This agreement does not bind any other U.S. Attorney's Office or any other federal or state agency.

1.     **Charges**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with Filing a False Claim for Refund, in violation of 18 U.S.C. § 287. The defendant fully understands the nature and elements of the crime with which he has been charged.

2.     **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the U.S. Sentencing Guidelines:

1

On or about April 20, 2023, Defendant Nathan Lloyd Staples filed a false, fictitious, and fraudulent claim for a refund of taxes against the Internal Revenue Service ("IRS"), an agency of the U.S. Department of the Treasury.

Specifically, in early 2022, Staples came to know Individual A through family contacts. Staples and Individual A then met together in coffee shops and elsewhere on multiple occasions. During those meetings, Individual A taught Staples how to submit false tax returns to the IRS. Individual A told Staples there was a secret trust maintained by the Treasury and funded with profits associated with Staples's birth certificate, which the government had used to securitize federal debt. Individual A advised that Staples could access the secret trust. To do so, according to Individual A, Staples needed to organize a family trust and file tax returns requesting tax refunds on behalf of his family trust. The Treasury would then send Staples funds from the secret trust.

Staples initially wondered whether what Individual A was suggesting was illegal. On multiple occasions, Staples asked Individual A why Staples was entitled to money from the Treasury when others were not. Individual A offered explanations, stating that most people simply didn't know about the secret trust fund. But Staples found the explanations confusing and did not understand. When Staples told family members and coworkers about what he'd learned from Individual A, they told him they doubted it was true. Staples searched the internet for information supporting what Individual A said, but instead found a government website warning that Individual A's beliefs that birth certificates were used to fund secret government trust accounts were false, and there were possible civil and criminal penalties for filing tax returns based on Individual A's theories. Staples raised the

2

matter with his father, who encouraged Staples to follow what the government website said.

Despite Staples's initial concerns, Staples filed false tax returns. He organized a trust called the Nathan Staples Estate. Then on or about April 20, 2023, with Individual A's assistance, Staples filled out, signed, and e-filed a 2022 IRS 1041 Form U.S. Income Tax Return for Estates and Trusts, on behalf of his family trust. As he prepared the tax return, Individual A told Staples that he could put any dollar amount he wanted in the line for withholding on the tax form. So in the return, Staples stated that his trust had a total income of $24,396,541, and that $19,032,840 of that income had been withheld. Based on those withholdings and various deductions, he claimed he had overpaid his taxes by $9,999,999. He claimed he was owed a refund in that amount. Staples applied his electronic signature to the tax return, declaring under penalties of perjury he had "examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete."

In reality, the information that Staples provided in the tax return was false, as he knew when he submitted it. Neither Staples nor his trust had an income of $24,396,541 in 2022. $19,032,840 had not been withheld from his paychecks. In 2022, he was employed in the restaurant business and had a household income of approximately $100,000.

During this same time period, Individual A instructed Staples that the IRS, upon receiving Staples's 2022 tax return, would be confused as to why Staples and his wife had previously filed tax returns as individuals and as a married couple, rather than as a family trust. Individual A advised Staples to submit amended returns in the name of Staples's

3

trust, to correspond with the 2022 tax return and to clean up his tax record. Staples did so. He filed approximately 38 amended returns for himself and for his wife, going back to 2005 for himself and back to 2001 for his wife. In total, Staples's amended tax returns requested an additional $202,055,000 in tax refunds. Staples believed these amended returns were necessary to clarify his tax record and to support his request for a $9,999,999 refund for tax year 2022.

In response to Staples's 2022 false tax return, the Treasury sent Staples a check for approximately $10,121,542. Staples deposited the check into a bank account he controlled on or about July 3, 2023. Within 12 days of gaining access to the funds, Staples spent and transferred approximately $1,055,614 of the funds. He placed an earnest money deposit on a house and bought an RV, three cars, luxury purses, and personal property. He also wrote a $50,000 check to a company controlled by Individual A, to compensate him for assisting with the fraudulent tax returns. Individual A cashed the check.

Soon afterwards, an IRS revenue officer became aware of Staples's fraud. He contacted the bank, who froze Staples's bank accounts. The IRS levied the accounts and seized various assets purchased with the fraud proceeds, recovering all but $784,479 of the government's funds.

Based on the above conduct, Staples admits that on or about April 20, 2023, (*i*) he made and presented a claim to a department or agency of the United States for money or property; (*ii*) the claim was false, fictitious, and fraudulent; and (*iii*) Staples knew at the time that he made and presented the claim that it was false, fictitious, and fraudulent.

3.      **Waiver of Indictment.** The defendant waives the right to be charged by indictment. The defendant agrees to sign a written waiver of this right at the change-of-plea hearing.

4.      **Waiver of Pretrial Motions**. The defendant understands and agrees he has certain rights to file pretrial motions. As part of this plea agreement, and based upon the concessions of the Government within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pretrial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

5.      **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the Government and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of

5

guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6.    **Additional Consequences**.  The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a U.S. citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.  The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

7.    **Statutory Penalties**.  The defendant understands that Count One of the Information, charging Filing a False Claim for Refund in violation of 18 U.S.C. § 287, is a felony offense that carries the following statutory penalties:

    a.    a maximum of 5 years in prison, 18 U.S.C. § 287;

    b.    a maximum of 3 years of supervised release, *id.* §§ 3559(a)(4), 3583(b)(2);

    c.    a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greater, *id.* § 3571(b)(3), (d); and

    d.    a mandatory special assessment of $100, *id.* § 3013(a)(2)(A).

8.    **Guidelines Calculations**.  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.*  Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing.  The parties also acknowledge that the Court will consider the U.S.

6

Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

a. <u>Base Offense Level</u>. The parties agree the base offense level is 26, because the offense involved a tax loss of more than $9,500,000 but not more than $25,000,000. U.S.S.G. §§ 2T1.1(a)(1), (c)(1), 2T4.1(K).

b. <u>Specific Offense Characteristics</u>. The parties agree no specific offense characteristics apply.

c. <u>Chapter 3 Adjustments</u>. The parties agree that no Chapter 3 adjustments apply, other than acceptance of responsibility.

d. <u>Acceptance of Responsibility</u>. The Government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the Government of the defendant's intention to enter a plea of guilty, the Government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the Government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings, (2) the defendant provides full, complete, and truthful information to the U.S. Probation Office in the presentence investigation, and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the Government, pursuant to U.S.S.G. § 3E1.1 and § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. *Id.* § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the

7

Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. *Id.*

f.   Guidelines Range. If the adjusted offense level is 23, and the criminal history category is I, the Sentencing Guidelines imprisonment range is 46–57 months. *Id.* § 5, part A.

g.   Supervised Release. The Sentencing Guidelines supervised-release range is 1–3 years. *Id.* § 5D1.2(a)(2).

h.   Fine Range. The Sentencing Guidelines fine range is $20,000–$200,000. *Id.* § 5E1.2(c)(1)–(3).

9.   **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10.   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and depart

8

from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

12. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

13. **Restitution.** Defendant agrees to pay restitution to the IRS in the total amount of $784,479, pursuant to 18 U.S.C. § 3663(a)(3). Defendant agrees that the total amount of restitution reflected in this agreement results from the defendant's illegal conduct. This amount consists of the portion that the United States has not recovered from the tax refund that Staples improperly received in response to his false 2022 tax return. Defendant agrees to pay Title 26 interest on the restitution amount, and that interest runs from the last date prescribed for payment of the relevant tax through the date of sentencing. The government will provide an updated interest figure at sentencing.

9

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

Defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

10

If full payment cannot be made immediately, Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. Defendant also agrees to provide the above-described information to the probation office. If Defendant makes a payment of the restitution agreed to in this paragraph prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to this paragraph.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the Government the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the Government in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the Government to obtain information concerning the defendant's assets and expressly authorizes the Government to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the Government, the defendant agrees to submit to one or more asset interviews or depositions under oath.

11

15.    **Waivers of Appeal and Collateral Attack**.  The defendant hereby waives the right to appeal any non-jurisdictional issues.  This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.  The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment exceeding 57 months of imprisonment.

The defendant also waives the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.  This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect.  For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney.  The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The Government agrees to waive its right to appeal any sentence.

16.    **FOIA Requests.**  The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the

Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.    **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the Government and the defendant.  By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with her decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

LISA D. KIRKPATRICK
Acting United States Attorney

Date: 2/11/2025

BY:    Matthew D. Forbes
Assistant U.S. Attorney

Date: 2/11/2025

Nathan Lloyd Staples
Defendant

Date: 2/11/25

James H. Gempeler
Counsel for Defendant Nathan Lloyd Staples

13